UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

PAMELA S. WORMWOOD,                    )
                                       )
            Plaintiff,                 )
                                       )        No. 1:08-CV-60
v.                                     )
                                       )        *Edgar / Lee*
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
            Defendant.                 )

## REPORT AND RECOMMENDATION

        This action was instituted by the Plaintiff pursuant to 42 U.S.C. § 405(g) seeking judicial

review of the final decision of the Commissioner of Social Security ("Commissioner" or

"Defendant") denying the Plaintiff supplemental security income ("SSI") under Title XVI of the

Social Security Act, 42 U.S.C. §§ 1381-1383f. This matter was referred to the undersigned pursuant

to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and

recommendation regarding the disposition of Plaintiff's motion for judgment on the pleadings [Doc.

11] and Defendant's motion for summary judgment [Doc. 15].

        For the reasons stated herein, it is **RECOMMENDED** that: (1) Plaintiff's motion for

judgment on the pleadings [Doc. 11] be **DENIED**; (2) Defendant's motion for summary judgment

[Doc. 15] be **GRANTED**; (3) the decision of Commissioner be **AFFIRMED**; and (4) this action be

**DISMISSED**.

## Administrative Proceedings

Plaintiff filed an application for SSI on May 29, 2003, alleging disability beginning on April 26, 2002 – which was subsequently amended to May 29, 2003 – due to coronary artery disease, incisional ventral hernia, pancreatitis, stroke, hypertension, and diabetes mellitus (Tr. 50-53). After her claims were denied initially and on reconsideration (Tr. 41-43, 46-47), Plaintiff requested a hearing before an administrative law judge ("ALJ") (Tr. 30). Following a hearing (Tr. 801-29), the ALJ issued an unfavorable decision on August 22, 2006, finding Plaintiff was not disabled (Tr. 10-20). The decision of the ALJ became the final decision of the Commissioner on January 23, 2008, when the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 5-7).

## Standard of Review

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were unsupported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence

standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

### How Disability Benefits Are Determined

The Sixth Circuit recently reiterated the five-step procedure used by the Social Security Administration ("SSA") to determine eligibility for disability benefits as follows:

> The [Social Security] Act entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). Such claimants qualify as "disabled." *Id.* A claimant qualifies as disabled if she cannot, in light of her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To identify claimants who satisfy this definition of disability, the SSA uses a five-step "sequential evaluation process." 20 C.F.R § 404.1520(a)(4). The five steps are as follows:

> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. *Id.* § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those

3

with impairments that have lasted or will last at least twelve months proceed to step three.

At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.

In the fourth step, the SSA evaluates claimants' "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.*; § 404.1560(c)(1). The SSA bears the burden of proof at step five. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).

## ALJ's Findings

The ALJ made the following findings in support of Commissioner's decision, which are conclusive if they are supported by substantial evidence in the record:

4

1. The claimant has not engaged in substantial gainful activity since May 29, 2003, the alleged onset date . . . .

2. The claimant has "severe" impairments, including coronary artery disease, an incisional ventral hernia, a history of pancreatitis, a prior stroke, hypertension, and diabetes mellitus . . . .

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a reduced range of light work, as follows: she can sit 6 hours in a workday, 2 hours at a time; she can stand or walk 3 hours in a workday, 45 minutes at a time; she can frequently lift 1-5 pounds and occasionally lift up to 20 pounds; she can infrequently bend at the waist, reach above the shoulders, or stand on a hard surface; and she can frequently use the hands for fine manipulation.

5. The claimant is unable to perform any past relevant work . . . .

6. The claimant was . . . 43 years old on the date the application was filed, which is defined as a younger individual . . . .

7. The claimant has a high school equivalency education and is able to communicate in English . . . .

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills . . . .

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . .

10. The claimant has not been under a "disability," as defined in the Social Security Act, since May 29, 2003 . . . the date the application was filed.

(Tr. 14-15, 19-20).

## Issue

The sole issue presented by Plaintiff is:

> Whether the AL erred by selectively accepting portions of the opinion
> of Plaintiff's treating physician, Dr. Barnett, and discrediting other
> portions of Dr. Barnett's opinion.

[Doc. 12 at 5].

## Review of Evidence

### *Plaintiff's Age, Education, and Past Work Experience*

Plaintiff was 47 years old at the time of the ALJ's decision (Tr. 10, 19). She has a high school education and has past relevant work as a dishwasher, cashier, laborer, and dispatcher (Tr. 19).

### *Medical Evidence*

It is not necessary to summarize all of the medical evidence, most of which is not in dispute, and only the most pertinent information will be briefly mentioned. Whether or not the medical evidence is summarized herein, all of the relevant medical evidence has been reviewed and considered in reaching the recommendation set forth in this report and recommendation.

Thomas Mullady, M.D. performed a consultative examination of Plaintiff for the state agency on September 16, 2003 (Tr. 454-56). Plaintiff's chief complaint concerned her concentration and short term memory (Tr. 454). Dr. Mullady's diagnoses were: (1) history of cerebrovascular accident; (2) diabetes mellitus, non-insulin dependent; (3) essential hypertension; (4) history of right carpal tunnel syndrome; and (5) history of pancreatitis secondary to cholelithiasis (Tr. 456). Dr. Mullady indicated Plaintiff had a history of cerebrovascular accident, but had no residual effect other than impairment of her short term memory (*id.*). He noted Plaintiff did not take antihypertensive

6

medication and that there were no physical findings consistent with the diagnosis of right carpal tunnel syndrome, although there were findings suggestive of extensor tendonitis of the right thumb (*id.*). Dr. Mullady further observed that Plaintiff had been diagnosed with a bicuspid aortic valve and had a loud heart murmur suggestive of some degree of aortic stenosis (*id.*). Dr. Mullady opined that Plaintiff retained the capacity to occasionally lift and/or carry, for up to one-third of an eight hour workday, a maximum of ten pounds; she would be able to frequently lift and/or carry from one-third to two-thirds of an eight hour workday, a maximum of ten pounds; Plaintiff would be able to stand and/or walk with normal breaks for a total of at least two hours in an eight hour workday and would be able to sit with normal breaks for a total of about six hours in an eight hour workday (*id.*).

Dr. Mullady performed a second consultative evaluation for the state agency on May 14, 2004 (Tr. 554-56). Plaintiff's chief complaint was her heart problem (Tr. 554). Plaintiff told Dr. Mullady she had been diagnosed with coronary artery disease and a biscuspid aortic valve (*id.*). Plaintiff brought medical records with her including a chest x-ray from November 2003, which showed a mild cardiomegaly and a nuclear heart scan from February 2004, which was reported to be within normal limits (*id.*). Plaintiff told Dr. Mullady that she had been prescribed sublingual nitroglycerin, but did not use it because her pain was not that bad, but was instead taking an aspirin when she experienced chest pain (*id.*). Dr. Mullady's diagnoses were: (1) a history of coronary angioplasty with stenting; (2) biscuspid aortic valve; (3) history of cerebrovascular accident; (4) diabetes mellitus, non-insulin dependent; (5) history of pancreatitis; and (6) decreased visual acuity (Tr. 556). Dr. Mullady stated Plaintiff retained the residual functional capacity ("RFC") to occasionally lift and/or carry for up to one-third of an eight-hour workday a maximum of ten pounds; she would be able to frequently lift and/or carry from one-third to two-thirds of an eight hour

7

workday a maximum of less than ten pounds; she would be able to stand and/or walk with normal breaks for a total of at least two hours in an eight-hour workday; and would be able to sit with normal breaks for a total of about six hours in an eight-hour workday (*id.*).

Frances H. Barnett. M.D. saw Plaintiff on June 27, 2004 for complaints of chest pain (Tr. 561-62). She noted Plaintiff continued to smoke (*id.*). On physical examination, Dr. Barnett noted Plaintiff's heart was in regular rhythm, although there was a grade 2/6 systolic ejection murmur (Tr. 562). Dr. Barnett's impression was: (1) acute chest pain; (2) coronary artery disease; (3) non-insulin dependent diabetes; and (4) hypertension (*id.*).

Plaintiff underwent a cardiac catheterization by Joseph Walter Sledge III, M.D. on June 29, 2004 (Tr. 577). Prior to the procedure, she had a 99% stenosis of her left anterior descending coronary artery (*id.*). After the procedure, Plaintiff had a 0% residual stenosis with no dissection (*id.*).

Dr. Barnett saw Plaintiff on August 7, 2004, after she went to the emergency room complaining of a cough which lasted for a week (Tr. 641-642). Dr. Barnett noted that Plaintiff's heart rhythm was regular, although there was a grade 3/6 systolic ejection murmur at the upper right external border; Plaintiff's cardiac enzymes were normal and her EKG showed no acute change and was stable (Tr. 642). Dr. Barnett's impression was: (1) acute chest pain, noncardiac, (2) acute bronchitis; (3) coronary artery disease; (4) non-insulin dependent diabetes; (4) hypertension; and (5) nicotine abuse (Tr. 642).

Dr. Mullady performed a third consultative examination at the request of the state agency on November 22, 2004 (Tr. 679-682). Plaintiff's chief complaint was her heart (Tr. 679). She told Dr. Mullady that in November 2003, following an episode of chest pain, she underwent a coronary

angioplasty with stenting, based upon the results of a coronary arteriogram, and had no anginal chest pain since undergoing the procedure (*id.*). Dr. Mullady's diagnoses were: (1) history of coronary angioplasty with stenting; (2) bicuspid aortic valve; (3) history of cerebrovascular accident; (4) history of pancreatitis; (5) diabetes mellitus, non-insulin dependent; and (6) decreased visual acuity (Tr. 681). Dr. Mullady commented that Plaintiff retained the RFC to occasionally lift and/or carry for up to one-third of an eight-hour workday a maximum of ten pounds; she would be able to frequently lift and/or carry from one-third to two-thirds of an eight hour workday a maximum of less than ten pounds; she would be able to stand and/or walk with normal breaks for a total of at least two hours in an eight hour workday; and would be able to sit with normal breaks for a total of about six hours in an eight-hour workday (Tr. 682).

Denise Bell, M.D. completed an RFC assessment for the state agency on December 13, 2004 (Tr. 685-89). Dr. Bell indicated Plaintiff could occasionally lift and/or carry a maximum of 50 pounds; frequently lift and/or carry a maximum of 25 pounds; stand and/or walk, with normal breaks, for about six hours in an eight-hour workday; and sit, with normal breaks, for about six hours in an eight-hour workday (Tr. 685A). Dr. Bell indicated Plaintiff's far visual acuity was also limited (Tr. 686).

Dr. Barnett completed a three-page medical opinion form concerning Plaintiff on September 7, 2005 (Tr. 775-77). On the first page of her questionnaire, Dr. Barnett indicated Plaintiff could six for six hours out of an eight-hour day, two hours at a time; stand or walk for three hours out of an eight hour day, 45 minutes at a time; frequently lift one to five pounds; occasionally lift one to ten pounds and 11 to 20 pounds; infrequently lift 21 to 25 pounds; never lift 50 pounds or greater; infrequently bend at the waist, reach above her shoulders or stand on a hard surface (Tr. 775). On

9

the second page of her assessment, Dr. Barnett indicated Plaintiff had edema of both lower extremities and had been advised to elevate her legs for 30 to 45 minutes daily; that the Plaintiff required bed rest for approximately one hour daily; that the patient did not have problems with stamina and endurance which would require her to rest more than the one 30 minute and two 15 minute breaks normally allowed (Tr. 776). Dr. Barnett also indicated that Plaintiff would need 30 minutes of rest for every three hours of work (*id.*). She further indicated Plaintiff could not be expected to be reliable in attending an eight hour day, 40 hours per week in view of her limitations; that the pain reasonably suffered by Plaintiff was moderately severe and that it was reasonable that Plaintiff's pain, medical condition and/or medication would cause lapses in concentration or memory for 30 to 60 minutes daily (Tr. 776). On the third page of her assessment, Dr. Barnett indicated Plaintiff needed to avoid dust and heights; that Plaintiff would have a reasonable medical need to be absent from a full time work schedule on a chronic basis, *i.e.*, more than four absences during a month; and that based upon her observations and diagnosis, the Plaintiff's subjective complaints seemed reasonable (Tr. 777). In addition, Dr. Barnett's handwritten progress notes concerning her treatment of Plaintiff also appear n the record (Tr. 748-49, 752-57, 763, 772, 774).

### *Hearing Testimony*

Again, it is not necessary to summarize all of the testimony, most of which is not in dispute. Whether or not the testimony is summarized herein, it has been reviewed and considered in reaching the recommendation set forth in this report and recommendation.

### A. *Plaintiff*

Plaintiff, who has not worked since she filed her SSI application in May 2003 (Tr. 806, 809), testified as follows: Plaintiff smokes one and one-half packs of cigarettes per day but has cut down

her smoking, because she used to smoke four packs of cigarettes per day (Tr. 809). Plaintiff cannot work because she gets tired easily and confused very easily (*id.*). Her hernias prevent her from lifting and she also cannot lift anything because of the stent in her heart (*id.*). She cannot concentrate, sit or stand for very long (Tr. 809). Plaintiff agreed with most of Dr. Barnett's assessment including that she could sit for six hours a day, two hours at a time; stand and walk three hours a day, 45 minutes at a time, frequently lift one to five pounds, and occasionally lift 11 to 20 pounds (*id.*). Plaintiff has occasional chest pains and takes two nitroglycerine pills about once per week and, on very rare occasions, has to take three nitroglycerine pills per week (Tr. 810).

Plaintiff does gardening work, but states she will only get out in the sun for about 15 minutes or so, then will go inside and rest. She vacuums and has no problems doing household chores for about 30 minutes at a time (Tr. 811).

Due to a stroke in 1997, when Plaintiff becomes tired she will slur her words, stumble on her right side and become confused (*id.*). Plaintiff does not sleep well at night (*id.*). She estimates she averages four or five hours of sleep per night (*id.*). Plaintiff takes naps during the day about two or three times per week (Tr. 812). Her naps will sometimes last up to four hours (*id.*). She becomes irritable and cranky if she does not take a nap (*id.*).

Plaintiff has diabetes (Tr. 812). She is taking pills for the condition and it seems to be doing fine (*id.*). Plaintiff has abdominal pain due to hernias (Tr. 812). She has had five surgeries for her ventral hernias (Tr. 813). When she has pain from her hernias, it affects her concentration (*id.*). Plaintiff has not had any recent flare-ups from her pancreatitis (Tr. 814). Plaintiff takes Tylenol, extra-strength, to deal with pain (Tr. 814).

Plaintiff does not drive because she has dizzy spells (Tr. 817, 818). Plaintiff stated she has

a dizzy spell about once a day and it lasts for about a minute or two (Tr. 818). She usually experiences a dizzy spell when she is walking, and the dizzy spell goes away if she stands still or sits down (*id.*).

Plaintiff also experiences problems with her knees (Tr. 819). She stated her knees give out on her (*id.*). Plaintiff estimated she could walk about a mile and stand in one place for about 15 minutes at a time before she had to sit down and rest (Tr. 820). She stated she needs to sit down because her knees start hurting and her legs start swelling (*id.*). She is not supposed to lift anything over her head because of the stent in her heart (*id.*). She has no problems lifting things such as a gallon of milk (*id.*). However, things like a really heavy laundry basket will cause problems with her hernia (*id.*).

Plaintiff stated she was born with abnormal valves, bicuspid rather than tricuspid, in her heart (Tr. 822). She stated she was told she will have to have a valve replacement by the time she is 50 (*id.*). Plaintiff stated she was told the valve replacement surgery will improve her hypertension and result in less stress to her heart (Tr. 822). Plaintiff's hobbies are embroidery and fishing (*id.*). She went fishing the weekend prior to the administrative hearing (Tr. 819).

### B. The Vocational Expert

Jane Colvin-Roberson, the vocational expert ("VE") at the administrative hearing (Tr. 805), testified as follows: In response to a hypothetical individual of the same age, education and past relevant work experience as the Plaintiff, with the RFC to work five days per week on a full-time basis; sit for six hours per day, two hours at a time; stand or walk three hours out of an eight hour day, 45 minutes at a time; can frequently lift one to five pounds; can occasionally lift one to ten pounds and 11 to 20 pounds, and can infrequently lift 21 to 25 pounds; can infrequently bend at the

waist; can infrequently reach above the shoulders; infrequently stand on a hard surface; frequently use hands for fine manipulation; should not climb ropes, stairs, ladders, ramps or scaffolds; should avoid dangerous machinery and extreme cold and heat, fumes, odors, dust, gases and poor ventilation, the VE stated such individual could perform a reduced number of assembly jobs, some of which fall into the category of light work and some of which fall into the category of sedentary work (Tr. 823-24). The VE also stated that if Plaintiff's testimony were fully credited, particularly her testimony about her need to frequently rest during the day and her limited endurance and fatigue, there would be no jobs in the national economy she could perform and she would not be able to sustain employment on a regular ongoing basis (Tr. 827). The VE further stated that if the previous hypothetical were modified to include the need for one hour of bed rest per day; a 30 minute break for every three hours of work; and moderately severe pain which causes daily lapses in memory and concentration for 30 to 60 minutes at a time, that there would be no jobs such a hypothetical individual could perform (*id.*). The VE further stated that the light and sedentary jobs she had identified in response to the initial hypothetical would usually allow for no more than one absence per month (Tr. 828).

## Analysis

### A.    *The Parties' Positions*

Plaintiff asserts the ALJ erred by selectively accepting portions of the opinion of her treating doctor, Dr. Barnett, and discrediting other portions of Dr. Barnett's opinion [Doc. 12 at 6-9]. Specifically, Plaintiff asserts that in a September 7, 2005 assessment (Tr. 775-77), Dr. Barnett opined that she had limitations that would preclude sustained full-time work because she would require one hour of bed rest daily and a 30 minute break for every three hours of work as well as being absent

from work four or more times per month [Doc. 12 at 6]. Plaintiff asserts the ALJ failed to adopt certain aspects of Dr. Barnett's assessment, finding that Plaintiff retains the RFC to perform a reduced range of light work, including the ability to sit for six hours in a workday and stand or walk for three hours (*id.* at 7). Plaintiff asserts this RFC assessment mirrors the first page of Dr. Barnett's assessment, but that the ALJ discredited the remaining two pages of the assessment (*id.*). Plaintiff contends the ALJ's rationale for declining to accept certain portions of Dr. Barnett's assessment does not survive scrutiny (*id.*).

The Commissioner essentially responded that the ALJ properly addressed the assessment and that his decision is supported by substantial evidence in the record [Doc. 16]. The Commissioner contends the ALJ properly accepted Dr. Barnett's exertional limitations, while finding that the other limitations regarding reliability and attendance at work, rest, and concentration were not supported by Dr. Barnett's own findings or other record evidence (*id.* at 7).

**B.**    ***The ALJ's Decision***

The ALJ explained his findings concerning the medical source opinions stating:

> As for the opinion evidence, Dr. Frances Barnett, who has treated the claimant for her medical complaints for several years, has provided an assessment dated September 7, 2005 which states, on page 1, that the claimant can sit 6 hours in a workday, 2 hours at a time; she can stand or walk 3 hours in a workday, 45 minutes at a time; she can frequently lift 1-5 pounds and occasionally lift up to 20 pounds; she can infrequently bend at the waist, reach above the shoulders, or stand on a hard surface; and she can frequently use the hands for fine manipulation. On pages 2 and 3, Dr. Barnett adds that the claimant would require 1 hour of bed rest in a workday and would require 30 minutes of rest after every 3 hours of work. The claimant could not reliably complete a workday or workweek due to moderately severe pain and the medical need to be absent from work on a chronic basis. She would have lapses in concentration or memory daily for 30-60 minutes. She would also need to avoid heat, or heights.

Social Security Regulations Ruling 96-2p provides that I must consider the opinions of physicians of record, and that controlling weight must be given to the medical opinion of a treating physician, if it is well supported by the medical evidence and if it is not inconsistent with other substantial evidence. Based on my review of the claimant's treatment records, I find that the limitations associated with chronic heart disease and multiple hernia surgeries would reasonably limit the claimant as described on page 1 of Dr. Barnett's assessment. Pages 2 and 3, however, lack objective support and therefore cannot be given credibility. These portions of the assessment consists only of check-marked boxes, with no explanation on the checklist as to why Dr. Barnett chose to place a check on a particular line, or whether the opinion would change if the claimant pursued other options for treatment previously suggested. These limitations are also not consistent with Dr. Barnett's own treatment notes at Exhibit 40F, which reflect only mild and manageable symptoms, or the mild abnormalities in Dr. Mullady's consultative reports, and make no reference to medically acceptable clinical or laboratory diagnostic techniques which would support the conclusions. Therefore, I have given this opinion only partial weight. Specifically, I credit the limitations on page 1, but not the limitations on pages 2 and 3.

Dr. Thomas Mullady examined the claimant on three occasions and, following each of these evaluations, outlined work restrictions compatible with sedentary work. However, a limitation to sedentary work is at odds with the mild physical abnormalities resulting from these evaluations, which would allow a greater exertional capacity than sedentary. In addition, Dr. Barnett's treating relationship and the greater consistency of her conclusions with the objective data entitle her opinion to a higher degree of probative weight than Dr. Mullady's opinion.

The state agency physicians initially concluded that the claimant did not have any severe physical impairments prior to the claimant's November 2003 angioplasty procedure. At the reconsideration level, the state agency sources assessed a medium RFC. However, additional medical findings have subsequently been made a part of the record, including Dr. Barnett's September 2005 assessment. As required by SSR 96-6p, I have considered the findings made by the DDS consultants. I have not given the DDS opinion controlling weight, because their findings were made without the benefit of the claimant's testimony at the hearing, and before additional evidence

from the claimant's treating sources had been received.

In summary, the totality of the record persuades me that page 1 of Dr. Barnett's assessment is the best reflection of the claimant's residual functional capacity.

(Tr. 18-19) (internal citations omitted).

### C. Standards

Applicable regulations state the Commissioner will evaluate every medical opinion and will consider the following factors in deciding what weight to give each opinion: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. §§ 404.1527(d), 416.927(d). Although a treating physician's opinion typically is entitled to substantial deference, as argued by Plaintiff, the ALJ is not bound by that opinion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The Sixth Circuit has consistently stated the treating source's opinion is entitled to deference only if it is based on objective medical findings, *see, e.g.*, *Warner*, 375 F.3d at 390; *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993), *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985), and not contradicted by substantial evidence to the contrary. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987).

If the treating source's opinion is not given controlling weight, its weight is determined by the same factors that are considered in evaluating every medical opinion. It is well-settled law in the Sixth Circuit that if an ALJ does not accord controlling weight to the opinion of a claimant's treating source, the ALJ must apply certain factors in determining what weight to give the opinion. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). Pursuant to the regulations, the ALJ:

16

is to consider (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the treating source.

*Id.* (quoting 20 C.F.R. § 404.1527(d)).

The ALJ must weigh the opinions of the acceptable medical sources, including the opinions of the treating physicians and the state agency medical sources, as required by applicable regulations, and resolve inconsistencies between the acceptable sources. *See* 20 C.F.R. §§ 404.1527(d)(4), (f)(2)(i) and 416.927(d)(4), (f)(2)(i); *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987) ("Claimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings."). With respect to weighing the opinions, the Sixth Circuit has held the opinion of a treating physician generally is entitled to greater weight than the contrary opinion of a consulting physician who has examined the claimant on only a single occasion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997); *Hardaway*, 823 F.2d at 927. An ALJ may, however, discount a treating physician's opinion based on an opinion of an examining or a reviewing physician in appropriate circumstances. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990). The responsibility for weighing the record evidence, including conflicting physicians' opinions, and resolving the conflicts rests with the ALJ. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

In addition, the ALJ must give good reasons for the weight given a treating source's opinion. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 461 (6th Cir. 2005); 20 C.F.R. § 404.1527(d)(2)). This reason-giving requirement is "clearly procedural ensuring 'that the ALJ applies the treating

17

physician rule and permits meaningful review of the ALJ's application of the rule.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting *Wilson*, 378 F.3d at 544). The reason-giving requirement in § 404.1527(d)(2) "exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Id.* In the Sixth Circuit:

> [b]ecause of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions, denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

### D.    *Application of the Treating Physician Rule*

Contrary to Plaintiff's assertions, the ALJ followed the appropriate steps in deciding not to give controlling weight to the opinions of Plaintiff's treating physician, Dr. Barnett. The ALJ applied the correct legal standard to weigh the opinions of the acceptable medical sources, as required by applicable regulations, and appropriately resolved inconsistencies between the acceptable sources. *See* 20 C.F.R. §§ 404.1527(d)(4), (f)(2)(i) and 416.927(d)(4), (f)(2)(id.).); *Mullins*, 836 F.2d at 984; *Wilson*, 378 F.3d at 544. The ALJ accepted the exertional limitations opined by Dr. Barnett as consistent with the medical evidence of record, but did not accept the additional limitations opined by Dr. Barnett in pages two and three of her assessment finding they were not consistent with the other evidence of record, particularly Dr. Barnett's own findings as well as the findings of Dr. Mullady in his three consultative examinations of Plaintiff.

Although Plaintiff asserts the ALJ did not consider factors such as length of treating

18

relationship in the weight he accorded to Dr. Barnett's opinion, in discussing Dr. Mullady's opinion the ALJ noted that Dr. Barnett had a greater treatment relationship with Plaintiff than Dr. Mullady and also noted Dr. Barnett had treated Plaintiff for several years. The ALJ further noted the exertional limitations Dr. Barnett opined on page one of her questionnaire were more consistent with the objective medical evidence than the limitations opined by Dr. Mullady. Contrary to the argument of Plaintiff, the ALJ did not simply reject pages two and three of the assessment merely because of the nature of the form, which consisted of check marks and some handwriting, while accepting the first page, which also was a check form. Instead, the ALJ concluded that the limitations checked by Dr. Barnett on the second and third pages of her assessment did not have objective support in the record, including Dr. Barnett's own treatment notes.[1]

Plaintiff also suggests that pursuant to the regulations at 20 C.F.R. § 416.912(e), the ALJ had a duty to contact Dr. Barnett for further clarification of her treating source opinion. The regulation, 20 C.F.R. § 416.912, states that when the evidence received from a treating source is inadequate for a determination as to whether a plaintiff is disabled, the Commissioner will take action to obtain additional information, including, but not limited to, recontacting a plaintiff's treating physician to determine if the additional information necessary for a disability determination is readily available

---

[1] Further, many of the limitations opined in pages two and three of Dr. Barnett's questionnaire, such as the level of Plaintiff's pain, her fatigue, and her need to take a nap and/or rest breaks during the day, address Plaintiff's subjective complaints which would have been self-reported to Dr. Barnett. In his decision, the ALJ found that Plaintiff's subjective complaints of severe limitations were not consistent with the record as a whole, particularly that he activities of daily living were inconsistent with the level of limitation Plaintiff claimed to experience from her impairments, and were not fully credible (Tr. 17). Plaintiff has not challenged this finding, and, thus, has waived any review of the ALJ's credibility finding. *See Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883, 884 (6th Cir. 2003) (where a claimant does not raise an issue before the district court it is deemed waived).

from the treating source. The "regulations impose a duty to recontact a treating physician only when the record is inadequate to make a determination of disability." *Jackson v. Barnhart*, 368 F. Supp. 2d 504, 507, n.1 (D.S.C. 2005). "[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty." *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (citing 20 C.F.R. § 416,912(e)). "The duty to recontact a medical source is triggered when the evidence is insufficient to make an informed determination – not when the evidence is insufficient to make a favorable determination." *James v. Astrue*, No. 4:07CV1382 HEA, 2008 WL 4204712, * 9 (E.D.Mo. Sept. 8, 2008). "The ALJ is not required to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Id.* (citing *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir.2005)). In this instance, the ALJ did not find the medical evidence was inadequately developed for a determination as to Plaintiff's disability, but rather, the ALJ accepted the exertional limitations set forth in page one of Dr. Barnett's assessment as being the best reflection of the Plaintiff's RFC.

Having reviewed the record in light of the Plaintiff's assertions of error, I **FIND** the decision of the Commissioner denying SSI benefits to Plaintiff is supported by substantial evidence in the record. Accordingly, I **RECOMMEND** the decision of the Commissioner be affirmed.

## Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, for the reasons stated above it is **RECOMMENDED**[2]:

(1)      Plaintiff's motion for judgment on the pleadings [Doc. 11] be **DENIED**;

(2)      Defendant's motion for summary judgment [Doc. 15] be **GRANTED**;

(3)      Judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure **AFFIRMING** the Commissioner's decision which denied benefits to the Plaintiff; and

(4)      This action be **DISMISSED**.


s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).